Subers Liquor License Case.

Argued March 23, 1953. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Howard F. Reed, Jr.,* with him *E. Walter Helm, 3rd,* for appellant.

*William P. Thorn* and *Edmund P. Hannum,* Special Deputy Attorney General, with them *Horace A. Segelbaum,* Deputy Attorney General, *Robert E. Woodside,*

Attorney General, and *Duane, Morris & Heckscher,* for appellee.

OPINION BY RENO, J., July 14, 1953:

Walter R. Subers applied to the Pennsylvania Liquor Control Board for a new restaurant liquor license. After a hearing the Board filed an opinion and order refusing the grant of the license, and the applicant thereupon appealed to the court below. After a hearing de novo before the court en banc an order was filed dismissing the appeal and sustaining the action of the Board on the ground that one of the protestants, the Oakmont Fire Company No. 1, is a charitable institution; that a plot of ground adjoining the said fire house is a public playground; and the applicant's establishment is located within three hundred feet of both. This appeal by the applicant followed.

The pivotal question is whether a volunteer fire company is a "charitable institution" within the meaning of the Liquor Code of April 12, 1951, P. L. 90, §404, 47 P.S. §4-404. The section contains the proviso: "That in the case of any new license or the transfer of any license to a new location the board may, in its discretion, grant or refuse such new license or transfer if such place proposed to be licensed is within three hundred feet of any church, hospital, charitable institution, school, or public playground . . ."

The charter of the Oakmont Fire Company No. 1 indicates it was incorporated for the maintenance and support of a fire engine, hook and ladder, and hose company for the control of fire. The evidence establishes that the company makes no charge for its services which are rendered without discrimination, and that funds required for its operations are obtained from voluntary contributions of the residents of the fire zone served by the company, the Board of Commissioners of

Haverford Township, and investments of the company. It has no capital stock and no profits or dividends are paid or distributed to individual members of the company. It owns a fire house approximately 52 feet from appellant's premises. The company not only protects the community from the hazards of fire but also maintains and uses equipment for emergency aid to persons and for the protection of property. Its origin, organization, functions, objects and methods of operation clearly establish the company as a charitable institution. 10 Am. Jur., Charities, §134. No less applicable here is the statement of Mr. Justice PAXSON in *Fire Insurance Patrol v. Boyd*, 120 Pa. 624, 646, 15 A. 553: "Our conclusion is that the Fire Insurance Patrol of Philadelphia is a public charitable institution; that in the performance of its duties it is acting in aid and in ease of the municipal government in the preservation of life and property at fires."

Appellant contends the purpose for so broad a definition of "charitable institution" which, it is conceded, includes volunteer fire companies, is to protect the funds of private groups serving the public interest from dissipation by suits and from individuals seeking pecuniary gain. This purpose, it is argued, is remote from the purposes for which the Liquor Code was enacted and therefore the term "charitable institution", as used in the Liquor Code, does not include volunteer fire companies. This contention is without merit. There is no basis for ascribing a restricted meaning to the words "charitable institution" so as to limit its application to organizations similar to the others specifically enumerated in §404 of the Liquor Code. Churches, hospitals, schools and public playgrounds are engaged in serving the public interest by ministering to the moral, spiritual, physical and educational needs of the community. The same fundamental aims and objectives

constitute the basis for determining if a charitable institution is within the purview of §404 of the Liquor Code, even though not of the same general classification as the organizations specifically set out. Using the broad humanitarian goals outlined above as a guide in determining the legislative intent, it is apparent that a volunteer fire company, organized and maintained by the citizens of the community for the protection of lives and the preservation of property from loss by fire, is a charitable institution within the meaning of the Liquor Code. This determination is made even more conclusive by §104, 47 P.S. §1-104, of the Liquor Code, headed, "Interpretation of Act", which states: "(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and *all of the provisions of this act shall be liberally construed for the accomplishment of this purpose.*" (Emphasis added.)

Moreover, the Statutory Construction Act of May 28, 1937, P. L. 1019, §33, 46 P.S. §533, provides that words used in a statute shall be construed according to their common and approved usage. Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary. *Com. v. Hicks,* 365 Pa. 153, 74 A. 2d 178. See *Ryder Appeal,* 365 Pa. 149, 74 A. 2d 123; *Smrekar v. J. & L. Steel Corp.,* 137 Pa. Superior Ct. 183, 8 A. 2d 461.

The refusal to grant the license was clearly in the public interest. The restaurant of the applicant is approximately 52 feet from the fire house of the Oakmont Fire Company No. 1. The company vigorously objected to the granting of a liquor license for these premises.

Competent evidence established the strong probability of an increase in traffic congestion near the entrance to the fire house if the applicant is permitted to engage in the liquor dispensing business at this restaurant. Volunteer firemen responding to a fire call would not only be confronted by a parking problem but would be delayed in moving their equipment out of the fire house. It is obvious these conditions would hinder the fire company in protecting persons and property from loss by fire.

Our conclusion that the Oakmont Fire Company No. 1 is a charitable institution within the meaning of §404 of the Liquor Code, and the refusal of the license to have been in the public interest, makes it unnecessary to determine if the lots adjacent to the fire house are also a "public playground" within the purview of the Liquor Code.

Order affirmed at appellant's costs.