J-A08039-21

2021 PA Super 148

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
NICOLE LEE :
:
Appellant : No. 1396 EDA 2020

Appeal from the Order Entered July 20, 2020
In the Court of Common Pleas of Monroe County Criminal Division at
No(s): CP-45-CR-0002265-2019

BEFORE: PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED JULY 27, 2021**

Appellant, Nicole Lee, appeals from the order entered in the Court of Common Pleas of Monroe County which denied her "Motion to Determine Legality of Sentence" filed with the court during a revocation of probation hearing. Herein, Appellant contends that the application of the mandatory minimum sentencing provision of 75 Pa.C.S.A. § 3806, designating a prior adjudication of delinquency as a "prior offense" triggering the mandatory sentencing enhancements of 75 Pa.C.S.A. § 3806 was both unconstitutional and in conflict with governing decisional law. We affirm.

On January 22, 2020, Appellant entered a counseled guilty plea to one count of DUI-Controlled Substance, Impaired Ability under 75 Pa.C.S. § 3802(d)(2). The Commonwealth had initially filed the charge as a first offense and offered Appellant Accelerated Rehabilitated Disposition ("ARD"), but it

_____

[*] Former Justice specially assigned to the Superior Court.

amended the criminal information to charge her as an ARD-ineligible second offender, upon discovering her 2011 adjudication of delinquency for DUI. **See** 75 Pa.C.S. § 3806(a) (prior offense for DUI sentencing includes adjudication of delinquency).[1]

On June 16, 2020, the trial court sentenced Appellant to probation for a period of 24 months, with a condition that she serve 90 days under house arrest with electronic home monitoring. This 90-day mandatory minimum penalty was imposed pursuant to 75 Pa.C.S. § 3804(c)(2)(i), which provides that an individual who violates Section 3802(d) as a second DUI offense shall undergo not less than 90 days imprisonment. The court also imposed a mandatory $1,500 fine, additional fees and costs, and suspended her driving privileges for 18 months.

---

[1] Section 3806 defines the term "prior offense" as follows:

**§ 3806. Prior offenses**

> **(a) General rule.**—Except as set forth in subsection (b), the term "prior offense" as used in this chapter shall mean any conviction for which judgment of sentence has been imposed, adjudication of delinquency, juvenile consent decree, acceptance of Accelerated Rehabilitative Disposition or other form of preliminary disposition before the sentencing on the present violation for any of the following:
>
> (1) an offense under section 3802 (relating to driving under influence of alcohol or controlled substance)

75 Pa.C.S. § 3806(a)(1).

Two days later, on June 18, 2020, Appellant tested positive for opiates and fentanyl, at which time she also made a written admission that she used heroin intravenously on June 15, 2020. She tested positive again on June 22, 2020, and she signed an admission that she had used heroin on June 18, 2020. Accordingly, the court scheduled a revocation of probation hearing for July 20, 2020.

On July 16, 2020, four days prior to the scheduled revocation hearing, Appellant filed a "Motion to Determine Legality of Sentence" assailing the Commonwealth's use of her adjudication of delinquency-DUI as a prior offense for purposes of imposing a second-offender mandatory sentencing enhancement. On July 20, 2020, at the conclusion of the revocation hearing, the trial court denied Appellant's motion, revoked her probation, and resentenced her to a term of incarceration of not less than 90 days nor more than 24 months less one day, to be served in the Monroe County Correctional Facility.

On July 23, 2020, Appellant filed the present appeal in which she raises one question for our review:

> Whether, considering the holding in [**Commonwealth v.** **Chichkin**, [232 A.3d 959 (Pa. Super. 2020)], the Sentencing Court erred in grading [Appellant's] DUI offense as a 2nd offense based upon a prior adjudication of delinquency for DUI?

Appellant's brief, at 4.

> Following probation violation proceedings, this Court's scope of review is limited to verifying the validity of the proceeding and the legality of the sentence imposed. **Commonwealth v.**

> *Heilman,* 876 A.2d 1021 (Pa. Super. 2005). "The defendant or the Commonwealth may appeal as of right the legality of the sentence." 42 Pa.C.S.A. § 9781(a). As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable and the court can even raise and address it *sua sponte.* *Commonwealth v. Edrington,* 780 A.2d 721, 723 (Pa. Super. 2001). *See also Commonwealth v. Robinson,* 931 A.2d 15, 19–20 (Pa. Super. 2007). "Issues relating to the legality of a sentence are questions of law...." *Commonwealth v. Diamond,* 945 A.2d 252, 256 (Pa. Super. 2008), *appeal denied,* 598 Pa. 755, 955 A.2d 356 (2008). As with all questions of law on appeal, our "standard of review is *de novo* and our scope of review is plenary." *Id.*

> "A claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence." *Commonwealth v. Catt,* 994 A.2d 1158, 1160 (Pa. Super. 2010) (*en banc*). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Id.* (quoting *Commonwealth v. Watson,* 945 A.2d 174, 178–79 (Pa. Super. 2008)). Likewise, a sentence that exceeds the statutory maximum is illegal. *Commonwealth v. Bradley,* 575 Pa. 141, 834 A.2d 1127 (2003). If a court "imposes a sentence outside of the legal parameters prescribed by the applicable statute, the sentence is illegal and should be remanded for correction." *Commonwealth v. Vasquez,* 560 Pa. 381, 388, 744 A.2d 1280, 1284 (2000).

*Commonwealth v. Infante*, 63 A.3d 358, 363 (Pa. Super. 2013).

Initially, we note that Appellant's sole issue on appeal challenging the legality of her sentence focuses not on the propriety of the revocation proceedings and revocation sentence, *per* se, but on the legality of her underlying DUI—second offender sentence, which she claims was unlawfully based on the court's determination that her prior adjudication of delinquency for DUI qualifies as a "prior offense" for purposes of DUI sentencing. When

previously confronted with a procedurally irregular claim of sentence illegality, this Court has opined as follows:

> When, on appeal from a sentence imposed following probation revocation, an appellant collaterally attacks the legality of the underlying conviction or sentence,
>
> > such an approach is incorrect and inadequate for two reasons. First any collateral attack of the underlying conviction [or sentence] must be raised in a petition pursuant to the Post–Conviction Relief Act. Second, such an evaluation ignores the procedural posture of [the] case, where the focus is on the probation revocation hearing and the sentence imposed consequent to the probation revocation, not the underlying conviction and sentence.
>
> ***Commonwealth v. Beasley****,* 391 Pa. Super. 287, 570 A.2d 1336, 1338 (1990). The PCRA provides the sole means for obtaining collateral review of a judgment of sentence. ***Commonwealth v. Fowler****,* 930 A.2d 586, 591 (Pa. Super. 2007), *appeal denied,* 596 Pa. 715, 944 A.2d 756 (2008); 42 Pa.C.S.A. § 9542. "[A] court may entertain a challenge to the legality of the sentence so long as the court has jurisdiction to hear the claim. In the PCRA context, jurisdiction is tied to the filing of a timely PCRA petition." ***Id****.* at 592 (quoting ***Commonwealth v. Berry****,* 877 A.2d 479, 482 (Pa.Super.2005) (*en banc*), *appeal denied,* 591 Pa. 688, 917 A.2d 844 (2007)). "Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto." ***Fowler, supra****.* Pennsylvania law makes clear no court has jurisdiction to hear an untimely PCRA petition. ***Commonwealth v. Robinson****,* 575 Pa. 500, 837 A.2d 1157 (2003). Thus, a collateral claim regarding the legality of a sentence can be lost for failure to raise it in a timely manner under the PCRA. ***Commonwealth v. Wojtaszek****,* 951 A.2d 1169, 1173 n. 9 (Pa.Super.2008), *appeal denied,* 600 Pa. 733, 963 A.2d 470 (2009).

***Infante***, 63 A.3d at 363–65.

Here, because Appellant filed her motion challenging the legality of the DUI sentence more than 10 days after the lower court's sentencing order, it may not qualify as a timely post-sentence motion. Nor was her motion filed with this Court as a direct appeal from her Underlying DUI sentence.

However, consistent with our above-referenced jurisprudence, we may consider her counseled challenge to the legality of the underlying DUI sentence as a timely first PCRA petition, as it was filed within one year of the time her judgment of sentence became final. We, therefore, proceed with merits review of her claim.

As our disposition of the present matter turns in significant part on an interpretation of Vehicle Code Section 3806(a), and given our need to ascertain and effectuate the intent of the legislature in the absence of a determination by the Pennsylvania Supreme Court regarding the use of a prior adjudication of delinquency as a predicate "prior offense" for imposing a mandatory sentencing enhancement under the relevant statutory scheme, we set forth the following standard of review regarding statutory interpretation:

> The legislature has directed that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). **See also Commonwealth v. Heberling**, 451 Pa. Super. 119, 678 A.2d 794, 795 (1996). Accordingly, "even where legislation demonstrates a 'recidivist philosophy,' that philosophy cannot be exalted over the plain meaning of the statute." **West v. Commonwealth Dep't of Transp.**, 685 A.2d 649, 651 (Pa. Cmwlth. 1996).
>
> Consequently, "[i]n construing a statute to determine its meaning, the courts must first determine whether the issue may be resolved

by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Id*. *See also Commonwealth v. Harner*, 533 Pa. 14, 20, 617 A.2d 702, 705 (1992) ("When language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning."). We will consider the language of a statute ambiguous "only where it will bear two or more meanings." *City of Philadelphia v. Schaller*, 148 Pa.Super. 276, 25 A.2d 406, 409 (1942). *See also Pennsylvania Assigned Claims Plan v. English*, 541 Pa. 424, 430, 664 A.2d 84, 87 (1995) (reasoning that statute is ambiguous if "unclear or susceptible of differing interpretations."). "Words having a precise and well-settled legal meaning must be given that meaning when they appear in statutes unless there is a clear expression of legislative intent to the contrary." *Commonwealth v. Hicks*, 365 Pa. 153, 154, 74 A.2d 178, 178 (1950). *See also* 1 Pa.C.S. § 1903(a). Moreover, where a general provision in one statute is in conflict with a specific provision in the same or another statute, the specific provision will prevail. *Olshansky v. Montgomery County Election Bd.*, 488 Pa. 365, 370, 412 A.2d 552, 555 (1980). *See also Commonwealth v. Klingensmith*, 437 Pa.Super. 453, 650 A.2d 444, 447 (1994).

*Commonwealth v. Thomas*, 743 A.2d 460, 464-65 (Pa. Super. 1999).

Appellant argues her sentence for DUI, second offense, is illegal because it was based on the court's erroneous determination that her adjudication of delinquency for DUI constituted a prior conviction for purposes of the Vehicle Code's sentencing scheme referenced *supra*. Specifically, she posits "a juvenile adjudication does not have adequate constitutional protections to count as a first offense after *Chichkin*[,]" referring to this Court's recent decision declaring unconstitutional the mandate within Section 3806 that a sentence enhancement apply for a prior acceptance of ARD-DUI.

For its part, the Commonwealth argues that *Chichkin* is strictly limited to that part of Section 3806 pertaining to prior acceptances of ARD, which,

this Court observed, lack due process protections afforded in a criminal trial precisely because the DUI case is not actually prosecuted if the defendant completes the program. Dissimilarly, an adjudicatory hearing involves the vast majority of due process standards—most notably, the requirement of proof beyond a reasonable doubt—applicable in a criminal trial, the Commonwealth maintains.

In **Chichkin**, this Court, analyzing Section 3806(a)(1), and applying the United States Supreme Court's decisions in **Alleyne v. United States**, 570 U.S. 99 (2013), and **Apprendi v. New Jersey**, 530 U.S. 466 (2000), concluded that Section 3806(a)(1)'s inclusion of ARD as a "prior offense" for purposes of applying the second offender sentencing enhancement set forth in Section 3804 is unconstitutional. Consistent with due process principles recognized in **Alleyne**, we held that acceptance of ARD was not tantamount to a prior conviction and, therefore, could not qualify as an exception to the **Apprendi/Alleyne** directive that any fact increasing a defendant's punishment must be submitted to a jury and proven beyond a reasonable doubt.

**Chichkin** outlined the relevant jurisprudence, as follows:

In **Alleyne**, the United States Supreme Court, held "**[a]ny fact** that, by law, **increases the penalty** for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." **Alleyne**, 570 U.S. at 103, 133 S.Ct. 2151 (emphasis added). The decision was an expansion of the Court's prior ruling in **Apprendi** [ ], which applied only to those facts that increased the penalty for a crime beyond the "prescribed statutory maximum." **Alleyne**, 570 U.S. at 107, 133 S.Ct. 2151, *citing*

*Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. In *Alleyne*, the Court vacated the defendant's mandatory minimum sentence, which the trial court imposed after it found, by a preponderance of the evidence, that the defendant had "brandished" — as opposed to simply used or carried — a firearm during the commission of his offense. *Alleyne*, 570 U.S. at 117, 133 S.Ct. 2151. The Court opined: "Because the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt." *Id.*

. . .

Applying the mandate of *Alleyne*, the Courts of this Commonwealth have concluded that many of our mandatory minimum sentencing statutes are unconstitutional because they permit judicial fact finding by the sentencing court, under a preponderance of the evidence standard, absent pretrial notice to the defendant. *See Commonwealth v. Wolfe*, 636 Pa. 37, 140 A.3d 651 (2016) (prior version of 42 Pa.C.S. § 9718(a)(1), imposing mandatory minimum when victim of sexual assault is less than 16 years old);[] *Commonwealth v. Hopkins*, 632 Pa. 36, 117 A.3d 247 (2015) (18 Pa.C.S. § 6317, imposing mandatory minimum for delivery of drugs within 1,000 feet of school); *Commonwealth v. Cardwell*, 105 A.3d 748 (Pa. Super. 2014) (18 Pa.C.S. § 7508, imposing mandatory minimum based upon weight of controlled substances); *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*) (42 Pa.C.S. § 9712.1, imposing mandatory minimum based upon drug offender's proximity to firearm).

Nevertheless, the United States Supreme Court, in both *Apprendi* and *Alleyne*, recognized an exception to this general rule based upon its prior decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), where the Supreme Court rejected a defendant's "constitutional claim that his **recidivism**[, which increased the penalty for his crime,] must be treated as an element of his offense." *See Almendarez-Torres*, 523 U.S. at 247, 118 S.Ct. 1219 (emphasis added). Therefore, the *Apprendi* Court held: "**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added). *See also*

- 9 -

*Alleyne*, 570 U.S. at 111 n.1, 133 S.Ct. 2151 (*Almendarez-Torres* recognized "a narrow exception to this general rule for the fact of a prior conviction"). Although the *Apprendi* Court questioned the continued vitality of *Almendarez-Torres*,[] to date the decision has not [been] overruled or modified. *See Commonwealth v. Aponte*, 579 Pa. 246, 855 A.2d 800, 802 (2004) (holding sentencing enhancement, which increased statutory maximum penalty "upon proof of a prior conviction for a similar offense, without requiring proof beyond a reasonable doubt before a jury," was constitutionally valid).

Therefore, pursuant to the foregoing authority, it is clear that any **fact** used to increase a defendant's sentence, which is not included as an element of the offense charged — such as the amount of drugs sold, the proximity of the drugs to a firearm, the distance of a drug sale to a school — must be submitted to a jury and found beyond a reasonable doubt. Furthermore, it is also clear that when a defendant is subjected to an increased sentence based upon a prior conviction, the "fact" of the prior conviction need **not** be submitted to a jury and found beyond a reasonable doubt. *See Commonwealth v. Reid*, 117 A.3d 777, 785 (Pa. Super. 2015) (imposition of mandatory minimum at 42 Pa.C.S. § 9714(a), based upon appellant's prior conviction of second crime of violence, did not violate *Alleyne*). *Accord Commonwealth v. Bragg*, 133 A.3d 328, 332–33 (Pa. Super. 2016) (United States Supreme Court recognized narrow exception to *Alleyne* rule for prior convictions), *aff'd*, 642 Pa. 13, 169 A.3d 1024 (2017).

*Chichkin*, 232 A.3d at 964-965. (emphasis in original).

The appellants' prior acceptances of ARD on charges of DUI could not be categorized as "prior convictions" exempt from the holding of *Apprendi* and *Alleyne*, the *Chichkin* Court reasoned, because "'ARD . . . is a pretrial disposition' and admission into an ARD program is 'not equivalent to a conviction . . . since charges are deferred until completion of the program.'" *Id*. at 970 (citations omitted). To view prior ARD participation as sufficient proof of recidivism warranting enhanced sentencing penalties when the accused has been "adjudged guilty of no [prior] crime," *Chichkin* continued,

flouts due process considerations protecting one from conviction "except upon proof beyond a reasonable doubt" that the accused "actually committed the prior DUI offense." *Id*.

Therefore, the ***Chichkin*** Court declared that "the particular provision of 75 Pa.C.S. § 3806(a), which defines a prior acceptance of ARD in a DUI case as a 'prior offense' for DUI sentencing enhancement purposes, offends the Due Process Clause and is therefore unconstitutional." *Id*. at 971. "[A]bsent proof beyond a reasonable doubt that Appellants committed the prior offenses[,]" the Court concluded, the lower court violated the defendants' constitutional rights by increasing their sentences "based solely upon their prior acceptances of ARD." *Id*.

Appellant contends it is a "necessary and logical extension of ***Chichkin***" to conclude that an adjudication of delinquency also falls short of the procedural and substantive due process required of a criminal conviction. Appellant's brief, at 17. Because an adjudicatory hearing denies the right to both a public trial and jury trial and entails a diminished adversarial tenor given its primary aim of rehabilitation rather than punishment, Appellant maintains, an adjudication of delinquency may not properly serve as a prior offense triggering the mandatory minimum sentencing statute for DUI at Section 3804. We disagree.

Clear differences between acceptance of ARD and an adjudication of delinquency belie Appellant's argument. Most notable among these is that an adjudication of delinquency does not, like acceptance of ARD, involve the

suspension of the Commonwealth's obligation to present charges before a court and prove each and every element thereof beyond a reasonable doubt. **Commonwealth v. C.L.** 963 A.2d 489, 494 (Pa. Super. 2008).

Indeed, the Commonwealth's burden in an juvenile hearing is the functional equivalent to that of a prosecutor in a criminal trial, as an adjudication of delinquency attains only when the Commonwealth convinces the finder of fact that it has cleared the highest evidentiary bar in making its case that the juvenile has committed an act that would constitute a crime were he or she not a minor.

Other features to an adjudicatory hearing assist in fulfilling the constitutional mandate that significant due process protections be afforded an accused juvenile. Indeed, it is well-settled that the "Due Process Clause does require application during the adjudicatory hearing of 'the essentials of due process and fair treatment." **In re Winship**, 397 U.S. 358, 359 (U.S. 1970) (quoting **In re Gault**, 387 U.S. 1, 30 (1967)). These due process rights include the right to notice of the charges, to counsel, appointed if necessary, to confrontation and cross-examination of witnesses, and to the privilege against self-incrimination. **In Int. of Borden**, 546 A.2d 123, 124 (Pa. Super. 1988) (citing **In re Gault***)*. Other rights include the right to production of exculpatory evidence under **Brady v. Maryland**, 373 U.S. 83 (1963),[2] the

_____

[2] **Appeal of Cowell**, 364 A.2d 718, 722 (Pa. Super. 1976).

right to a speedy trial,**3** and the right to a direct appeal.[4] *In re Winship,* 397 U.S. at 368.

The requirement for such protections stems from recognition that, despite official pronouncements reassuring juvenile proceedings are designed 'not to punish, but to save the child,' "civil labels and good intentions do not themselves obviate the need for criminal due process safeguards in juvenile courts, for '(a) proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution.'" *In re Winship*, 397 U.S. at 366 (citation omitted). *See also In re R.M.*, 790 A.2d 300, 304-05 (Pa. 2002) ("Although by design juvenile proceedings are characterized by a degree of informality and flexibility, where constitutionally protected interests are at stake, the Due Process Clauses of the United States Constitution impose a requirement of fundamental fairness."). Likewise, this Court has acknowledged that, "[i]n juvenile proceedings, constitutional due process guarantees a juvenile almost the full panoply of constitutional protections afforded at an adult criminal trial." *C.L.* 963 A.2d at 494 (citing *In Interest of J.F.,* 714 A.2d 467, 470 (Pa. Super. 1998), *appeal denied,* 557 Pa. 647, 734 A.2d 395 (1990), *cert denied,* 528 U.S. 814, 120 S.Ct. 49, 145 L.Ed.2d 44 (1999)).

---

[3] *Commonwealth v. Dalenbach*, 729 A.2d 1218 (Pa. Super 1999).
[4] *In re J.B.*, 189 A.3d 390, 414 (Pa. 2018).

Though not specifically referenced in Appellant's brief, we take judicial notice of the passage in **Apprendi** regarding the importance of both the right to a trial *by jury* and proof beyond a reasonable doubt, **see infra**, and we acknowledge that under our Juvenile Act, there is no right to either a jury trial or a public trial. Nevertheless, on this point, we join the consensus reached by all but one U.S. Circuit Court of Appeals addressing the issue that the absence of a public trial and jury trial in a juvenile proceeding which otherwise provides the constitutional protections discussed above does not offend the **Apprendi**/**Alleyne** mandate.

For example, the United States Court of Appeals for the Third Circuit has held that Pennsylvania's juvenile proceedings afford sufficient due process protections to allow future use of an adjudication of delinquency as a prior conviction for purposes of increasing one's punishment consistent with **Apprendi**.

In **U.S. v. Jones** (3rd Cir. 2003), a case arising out of the Western District of Pennsylvania, the defendant/appellant raised an **Apprendi** challenge to the Commonwealth's use of a juvenile adjudication of delinquency for aggravated assault and robbery as one of three strikes in an Armed Career Criminal Act ("ACCA") mandatory sentencing enhancement case. The Third Circuit Court held that the prior nonjury juvenile adjudication afforded all constitutionally-required procedural safeguards and, thus, qualified as a "prior conviction" for purposes of the exception to the **Apprendi** requirement that any fact, other than prior conviction, that increases penalty for crime beyond

a prescribed statutory maximum must be submitted to a jury and proven beyond reasonable doubt.

In so holding, the Third Circuit considered the above-referenced admonition in *Apprendi* cautioning:

> There is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.

*Jones*, 332 F.3d at 695 (quoting *Apprendi*, 530 U.S. at 496). It then surveyed two relevant decisions filed in its sister courts of the Ninth Circuit and Eighth Circuit Courts of Appeals, respectively, which had reached different conclusions on whether the lack of a jury trial in a juvenile hearing precluded the resulting adjudication of delinquency from attaining "prior offense" status under the exception to the *Apprendi* general rule.

In the first of these decisions, *United States v. Tighe*, 266 F.3d 1187 (9th Cir.2001), a majority of the Ninth Circuit Court of Appeals determined that the "prior conviction" exception to *Apprendi*'s general rule must be limited to prior convictions obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. *Tighe* at 1194. Though it might appear at "first blush" that a juvenile adjudication would qualify for *Apprendi*' s exception, the Ninth Circuit Court decided such an appearance vanishes upon consideration of the constitutional differences between adult trials and juvenile adjudicatory hearings, most importantly, the lack of a right to a jury in most juvenile matters. *Id.* at 1192-93.

The Third Circuit Court in **Jones**, however, found persuasive the rationale of the Eighth Circuit Court of Appeals as expressed in its unanimous decision, **United States v. Smalley**, 294 F.3d 1030 (8th Cir. 2002), *cert. denied,* 537 U.S. 1114, 123 S.Ct. 870, 154 L.Ed.2d 790 (2003), holding that a prior juvenile adjudication may serve as a "prior conviction" under **Apprendi** despite the absence of a right to a jury:

> "the **Smalley** court examined the reality of actual juvenile adjudications to determine whether they are sufficiently reliable so as to not offend constitutional rights if used to qualify for the **Apprendi** exception. **Id.** at 1033.  The court noted that juvenile defendants receive process that has been held to satisfy constitutional standards, including the right to notice, right to counsel, right to confront and cross-examine witnesses, and the privilege against self-incrimination.  **Id.**  Furthermore, to convict a juvenile, a judge must find guilt beyond a reasonable doubt.  **Id.** The court found these procedural safeguards to be sufficient for purposes of the **Apprendi** exception.  **Id.**  In short, the **Smalley** court concluded that the absence of the right to a jury trial does not automatically disqualify juvenile adjudications for purposes of the **Apprendi** exception.
>
> . . .
>
> The Government . . . urges us to adopt the reasoning of the Eighth Circuit in **Smalley**.  It notes that in **McKeiver v. Pennsylvania**, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), the Supreme Court held that due process does not require providing juveniles with the right to a jury trial.  It follows, according to the Government, that when a juvenile is adjudicated guilty beyond a reasonable doubt in a bench trial that affords all the due process protections that are required, the adjudication should be counted as a conviction for purposes of subsequent sentencing under the ACCA.  We agree.

**Jones**, 332 F.3d at 696.

To date, **Jones** remains both controlling decisional law in the Third Circuit and consistent with the holdings reached in every other circuit of the United States Court of Appeals addressing the issue, save for the Ninth Circuit Court, for which **Tighe** remains precedential.[5]

Consonant with this jurisprudence, we reject the inference Appellant claims to draw from **Apprendi** and **Alleyne** that use of a prior offense to increase punishment is constitutional only if the prior offense was first proven to a finder of fact's satisfaction in a proceeding—either the prior or present one--where the accused had the right to a jury. Instead, we agree with the prevailing view that constitutional due process considerations, as interpreted by **Apprendi** and **Alleyne**, do not preclude sentence enhancement of an adult offender based on a prior adjudication of delinquency reached in a proceeding that conformed with the process due and conferred to the juvenile the catalog of rights described above, even in the absence of the right to a jury.

In the remainder of her argument, Appellant asserts her sentence enhancement diverges from controlling decisional law that has declined to regard adjudications of delinquency as predicates for increasing punishment.

---

[5] **Jones** is among a majority of the federal circuit decisions concluding **Apprendi** does not bar the use of a juvenile adjudication to enhance a sentence because it provides sufficient procedural safeguards to ensure the reliability that **Apprendi** requires. **See United States v. Wright**, 594 F.3d 259, 264 (4th Cir. 2010); **United States v. Crowell**, 493 F.3d 744, 750 (6th Cir. 2007); **Welch v. United States**, 604 F.3d 408, 426 (7th Cir. 2010); **United States v. Smalley**, 94 F.3d 1030, 1033 (8th Cir. 2002); **United States v. Burge**, 407 F.3d 1183, 1191 (11th Cir. 2005).

We find such decisions distinguishable, however, as they mainly relied on an interpretation of the particular language of the statute then under review.

In **Commonwealth v. Hale**, 85 A.3d at 585 (Pa. Super. 2014), this Court reviewed the mandatory sentencing enhancement scheme of 18 Pa.C.S. § 6105, Persons Not to Possess, and concluded that its terms mandated increased penalties only where the defendant's record established the presence of a prescribed prior "conviction."

Specifically, Section 6105 differentiates how prior convictions and prior adjudications of delinquency shall affect the grading of a Persons Not to Possess offense. In subsection (b), "convictions" for certain enumerated crimes shall subject the defendant to a mandatory sentencing enhancement.

In contrast, it is a separate subsection, subsection (c), that provides defendants adjudicated delinquent of certain offenses are subject to the general proscription of Persons Not to Possess as set forth in subsection (a), namely, that they may not carry a firearm. Unlike subsection (b), subsection (c) contains no provision setting forth mandatory sentence enhancements.

Declining the Commonwealth's invitation to construe the term "conviction" as inclusive of adjudications of delinquency for purposes of subsection (b), this Court noted that the term "conviction" has a legal connotation not generally understood to incorporate juvenile adjudications. **See id**. at 582. Therefore, we held that there existed no reason to interpret Section 6105 as applying sentence enhancements for prior adjudications of

- 18 -

delinquency where such adjudications were addressed in a separate subsection that did not apply mandatory enhancements.

After granting Appellant's petition for allowance of appeal, the Pennsylvania Supreme Court, at the outset of its opinion in affirmance, noted the Superior Court's observation that the Juvenile Act provides that adjudications *are not* convictions. **See** 42 Pa.C.S. § 6354(a) (prescribing that "[a]n order of disposition or other adjudication in a proceeding under this chapter *is not a conviction of a crime*" (emphasis added)). **Commonwealth v. Hale**, 128 A.3d 781, 783 (Pa. 2015). Within that setting, the high court further reiterated that courts may not "disregard the language of the persons-not-to-possess statute, render portions of that statute surplusage, and increase the grading of the offense to a second-degree felony." **Hale,** 128 A.3d at 783–84 (citing **Hale**, 85 A.3d at 585).

Significant for our inquiry, the Supreme Court's opinion emphasized that the very terms and structure of Section 6105, Persons Not to Possess, set forth the distinction between adjudications of delinquency and convictions for purposes of sentence enhancement. Specifically, the Court recognized that the General Assembly added subsection (c) to apply Section 6105's general proscription against carrying a firearm to individuals who have been "adjudicated delinquent" based on the commission of certain acts. Notably, the Court observed, subsection (c) did not incorporate the mandatory sentencing enhancement applicable to certain "convictions" specifically delineated in subsection (b).

On the role of courts regarding the principle of statutory interpretation and the deference required when confronted with an unambiguous statute such as Section 6105, enacted by the General Assembly, the Supreme Court stated as follows:

> On the merits, Appellee's arguments adhere closely to the Superior Court's rationale. He highlights the explicit distinction, made within Section 6105's own terms, between juvenile adjudication and convictions; the Juvenile Act's specific admonition that an adjudication "is not a conviction," 42 Pa.C.S. § 6354(a); and the principle of statutory construction requiring penal provisions to be construed narrowly, **see** 1 Pa.C.S. § 1928(b)(1).
>
> . . .
>
> "Upon review, we agree with the Superior Court and Appellee on all of the material points discussed above. As noted, *Baker* arose in the context of a *discretionary* sentencing determination—not a mandatory grading enhancement—**and certainly not an enhancement reposited within a statute that, on its terms, expressly distinguishes between convictions and adjudications.**[]
>
> . . .
>
> **The controlling point here is that Section 6105 does not proceed, along any such lines, to predicate the misdemeanor-to-felony enhancement upon adjudications of delinquency. Indeed, as emphasized by the intermediate court and Appellee, the consequence of a juvenile adjudication is otherwise addressed within the four corners of the statute. *See* 18 Pa.C.S. § 6105(c)(7). Accordingly, Section 6105 presents a context in which the legislative admonition that an adjudication of delinquency "is not a conviction" should be respected. 42 Pa.C.S. § 6354(a).**
>
> The Supreme Court of the United States recently discussed considerations relevant to determining the constitutionally

appropriate range of legal consequences attaching to the acts of minors in **Miller v. Alabama**, [567] U.S. [460], [471-478], 132 S.Ct. 2455, 2464–68, 183 L.Ed.2d 407 (2012) (touching upon a litany of empirical information supporting the Court's conclusion that "children are constitutionally different from adults for purpose of sentencing"). As a corollary, the case highlights the substantial policy considerations involved in determining culpability and the boundaries of attendant legal consequences for the actions of minors. **In Pennsylvania, subject to the limits of the Constitution, such matters are generally reserved, in the first instance, to the General Assembly. *See, e.g., Lance,* 624 Pa. at 264–65 & n. 26, 85 A.3d at 454 & n. 26 (recognizing that the General Assembly's ability to examine social policy issues and to balance competing considerations is superior to that of the judicial branch). For this reason, as well, we decline to superimpose the policy considerations underlying the *Baker* decision onto the mandatory enhancement requirement reposited in Section 6105(a.1)(1).**

**Here, we agree with the Superior Court and Appellee that the plain language of Section 6105(a.1)(1) should be enforced according to its terms.**

**Hale**, 128 A.3d at 784, 785-86 (emphasis added) (footnotes deleted).

In contrast with Section 6105 and the legislative intent recognized therein to segregate adjudications of delinquency from criminal convictions with respect to sentencing enhancements applicable to gun possession, the statutory regime at issue in the case *sub judice* clearly reflects legislative intent to categorize both prior DUI adjudications of delinquency and prior DUI convictions as predicate offenses which mandate increased punishment for recidivist drunk driving. Thus, the present case is distinguishable from **Hale**.

Similarly, Appellant relies on **Commonwealth v. Thomas**, 743 A.2d 460 (Pa. Super. 1999), in which this Court addressed the question of "whether prior juvenile adjudications may be treated as 'convictions' for the purpose of

sentence enhancement under 42 Pa.C.S. § 9714(a)(2)[,]" commonly described as the "three strikes" provision.[6]  As explained by **Thomas**,

> This section provides for imposition of a mandatory sentence on any defendant previously convicted of one or more of thirteen enumerated "crimes of violence."  **See id.** § 9714(g).  Any such person is presumed to be a "high risk dangerous offender" and is subject to substantial sentence enhancement upon conviction of a second or third offense.  **See id**. § 9714(c).  If the defendant fails to rebut the statutory presumption, the trial court must impose a sentence of total confinement for at least ten years, and with two prior convictions, twenty-five years to life.  **See** 42 Pa.C.S. § 9714(a)(1), (2) (respectively).

**Thomas**, at 461.

A majority of the three-judge panel in **Thomas** concluded that "application of section 9714(a)(2) to juvenile adjudications would expand this provision beyond the scope intended by the legislature and would violate the express language of the Juvenile Act.  **See** 42 Pa.C.S. § 6354(a)." **Thomas** at 461.  Specifically, the **Thomas** rationale reveals that the panel determined such a result was compelled by controlling statutory language expressly limiting the reach of Section 9714 to "convictions" and otherwise failing to designate juvenile adjudications as either the equivalent of convictions or qualifying predicate offenses:

> **Upon review, we conclude that section 9714 is written in terms with precise legal meanings that clearly restrict application of the measure to criminal defendants found guilty as adults, and not to juvenile delinquents**. This section directs imposition of a mandatory sentence on "[a]ny person who

---

[6] 42 Pa.C.S.A. § 9714, *prior version held unconstitutional by* **Commonwealth v. Butler**, 760 A.2d 384 (Pa. 2000).

is *convicted* ... of a crime of violence" if that person has "previously been *convicted* of two or more such crimes of violence." *See* 42 Pa.C.S. § 9714(a)(1), (2) (emphasis added). Our legislature has defined conviction in the Crimes Code as follows:

There is a conviction if the prosecution resulted in a judgment of conviction which has not been reversed or vacated, a verdict of guilty which has not been set aside and which is capable of supporting a judgment, or a plea of guilty accepted by the court. 18 Pa.C.S. § 109(3). We have applied this definition under circumstances analogous to those in this case, determining for purposes of recidivist sentencing enhancement, that an adjudication of delinquency is not a conviction of crime. *See* ***Commonwealth v. Rudd***, 366 Pa. Super. 473, 531 A.2d 515 (1987) (refusing to recognize adjudications of delinquency as prior convictions for purposes of enhanced sentencing under DUI statute, 75 Pa.C.S. § 3731). We have recognized also that the fundamental considerations on which an adult conviction is based are not operative in juvenile adjudications. ***See In re Holmes***, 379 Pa. 599, 603, 109 A.2d 523, 525 (1954) ("[Juvenile proceedings] are not in the nature of a criminal trial, but constitute merely a civil inquiry or action looking to the treatment, reformation and rehabilitation of the minor child. Their purpose is not penal but protective."). **Significantly, we find no language in section 9714 that purports to alter the presumptions underlying the juvenile justice system or to apply a more expansive definition of conviction. Section 9714 does not purport to prescribe a penalty on the basis of any form of decision other than conviction, and makes no reference in any context, to adjudications of delinquency. We find these omissions dispositive. Given the penal nature of section 9714 and the limited import of its language, we must consider specific prohibitions of the Juvenile Act that limit the subsequent effect of an adjudication of delinquency.** ***See Olshansky*,** 488 Pa. at 370, 412 A.2d at 554.

The Juvenile Act, pursuant to which the defendant was adjudicated delinquent prior to his conviction in this case, states precisely and without equivocation that a juvenile adjudication is not a conviction of crime and may be considered in subsequent proceedings only for limited purposes. The general rule propounded by the Juvenile Act codifies the long-standing policy of this Commonwealth, as follows:

> § 6354. **Effect of adjudication**
>
> General rule.—An order of disposition or other adjudication in a proceeding under this chapter *is not a conviction of crime* and does not impose any civil disability ordinarily resulting from a conviction or operate to disqualify the child in any civil service application or appointment.
>
> 42 Pa.C.S. § 6354(a) (emphasis added). **According this language its accepted legal meaning, we find this provision a conclusive expression of the legislature's intent that those adjudicated delinquent shall not be subject to the penalties associated with "conviction."**

*Thomas*, at 465-466 (emphasis added).

Here, again, Section 3806 of the Vehicle Code contains precisely the affirmative, transformative language that *Thomas* declared was necessary to infer the legislative intent to make prior adjudications of delinquency predicates for enhancing the sentences of adult DUI offenders. The lack of such language in the Three Strikes Law, which confined itself strictly to "convictions," was "dispositive" of the issue before it, the *Thomas* majority explained. There appeared nothing in the statute suggesting an intent to depart from either our Crimes Code or Juvenile Code provisions, or decisional law interpretations, that historically distinguished adjudications of delinquency from convictions for purposes of meting out punishment. Section 3806, in clear contrast, expressly makes both prior DUI adjudications and convictions sentencing enhancement predicates.

Therefore, Appellant may find no relief from either *Hale* or *Thomas*, as both decisions are distinguishable on their facts and, therefore, inapposite.

Each decision turned on the lack of explicit statutory language that would enable a court to infer legislative intent to use adjudications of delinquency to enhance sentencing. Through Section 3806, however, the General Assembly explicitly designates adjudications of delinquency for such a use, and thus allows for the inference that the statute reflects legislative intent to depart from prior authority confining such use to criminal convictions.

Therefore, having found the Vehicle Code's statutory scheme in question both constitutional under the ***Apprendi***/***Alleyne*** construct and free from conflict with decisional law, we deem Appellant's appeal devoid of merit.

Accordingly, we affirm the order denying Appellant's Motion to Determine the Legality of Sentence, which motion we construe as a timely first PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2021